## Case No. 6,149.

### HART v. BRIDGEPORT.

[13 Blatchf. 289.] 1

Circuit Court, D. Connecticut.    March 28, 1876.

MUNICIPAL CORPORATION — NEGLIGENCE OF SERVANTS—ULTRA VIRES.

1. A municipal corporation is not liable to an injured party, for the negligence of its mayor and its police officers, who have sufficient power and ability to preserve the peace and protect property, in not discharging the duty of protecting private property against a known violation of law.

2. The distinction pointed out between the public, governmental duties of a municipal corporation and its private or corporate duties.

3. A municipal corporation is not liable for the unlawful acts of its officers, committed ultra vires, and not colore officii, in the known and wilful violation of law.

[Cited in Greenwood v. Town of Westport, 60 Fed. 571.]

[Cited in Russell v. City of Tacoma (Wash.) 35 Pac. 606.]

At law.

Levi Warner, for plaintiff.

Morris W. Seymour, for defendant.

SHIPMAN, District Judge. This is an action of trespass on the case, against the city of Bridgeport, a municipal corporation incorporated by the legislature of the state of Connecticut. The plaintiff [Carmi Hart], a citizen of the state of New York, alleges, in his declaration, that, on June 23d, 1869, he was, and ever since has been, the owner and possessor of a described parcel of land within the corporate limits of the city of Bridgeport, and upon which a planing mill, foundry and other buildings were situate, and that he was also the owner of a steam engine, boiler and other machinery situate in said buildings, of all which real and personal property he was, on said day, entitled to the undisturbed and quiet enjoyment; that, "on said day, the defendant was, and ever since has been, a municipal corporation, under and by virtue of the laws of the state of Connecticut, having a mayor and other executive officers under his and its control, and having police authority and powers, and a legally constituted police, employed and paid by said city, and under its control, and having all other powers incident to, and necessary for, the full and ample protection of property within its limits, and especially for the protection of the property of the plaintiff, hereinbefore described, from the injury, wrongs and trespasses hereinafter mentioned, all of which powers were given and granted to the defendant to enable it, among other things, to protect the said property of the plaintiff and others, and that it then became and was, and ever since has been, the duty of

said city of Bridgeport, by reason of the facts aforesaid, and by virtue of the laws of said state of Connecticut, to protect the plaintiff from the injury to his said property and estate, hereinafter mentioned and described; yet the plaintiff says, that the defendant, its duty in the premises not regarding, did not perform the same, and did not protect the plaintiff in the possession, use and enjoyment of his said property, but wholly neglected and refused to protect him therein, as it might have done, and as it was its duty to have done, but, its said duty not regarding, and contriving and intending to injure the plaintiff, the defendant, on said 23d day of June, 1869, suffered sundry persons, without law or right, and contrary to the mind and will of the plaintiff, and with the full knowledge and assent of the defendant, and in presence of the mayor and police of said city of Bridgeport, with force and arms, to enter into and upon the said premises of the plaintiff, then in the possession of the plaintiff, and to continue in and upon said premises thereafter, until and upon the 27th day of June, 1869, and with the knowledge and consent of the defendant, and of the mayor and police aforesaid, on and during the days aforesaid, unlawfully and with force and arms, to eject the plaintiff from said premises, and tear down and remove said building, and carry away, break and destroy said steam engine and boiler, and said machinery and patterns, and dispose of the same to their own use, whereby the plaintiff has wholly lost and been deprived of the same, though the plaintiff then and there requested and demanded said defendant to protect him in his said property from said unlawful acts so done as aforesaid, as the defendant well knew that all said acts of violence, by which said property was so destroyed, were done without right, or claim of right, to do the same, and that the same were done in violation of law; yet, then and there contriving and intending to injure the plaintiff, the defendant, by its officers and agents, protected said persons in the doing of said unlawful acts, and in the destruction of said property, and, by its officers and agents, then and there prevented the plaintiff from resisting the destruction of said property, as he might and would lawfully have done had he not been so prevented by the defendant, by means of which neglect, wrongful acts and trespasses of the defendant, the plaintiff has been greatly injured, and has lost and been deprived of said buildings, steam engine, boiler, machinery, and patterns of machinery, to the damage of the plaintiff." To this declaration the defendant has demurred generally.

(1.) The principal question of law presented by the demurrer is, whether a municipal corporation is liable to an injured party, for the negligence of the mayor and its public officers, who have sufficient power and ability to preserve the peace and protect property, in not discharging the duty of protecting private

1 [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

property against a known violation of law. The general question of the liability of municipal corporations for negligence in the performance of public governmental duties, and in the performance of corporate duties, has been frequently considered by the courts in this country. The decisions of those courts to which we are accustomed to yield the highest respect, have been uniform, and the results which they have reached are clearly stated by Chief Justice Butler, in Jewett v. New Haven, 38 Conn. 387. The principles which are here quoted, though contained in a dissenting opinion, are those which have been adopted by an undivided court in four recent cases in this state. The dissent was upon the application of the principles in the particular case which was then under consideration. The learned chief justice says: "1. Officers and agents of the government partake of its immunity, and are not liable for negligence in the performance of functions or duties which are strictly governmental, whether such agents act in a corporate or individual capacity. But such immunity does not reach to or protect a contractor or his servants, who contracts with the government, or its officers and agents, to perform a governmental work. 2. Municipal corporations, to the extent that they are authorized or directed to exercise public governmental powers and perform public governmental duties, solely for the general good, are governmental agencies, and entitled to immunity in respect to the acts of their subordinate officers or agents. But, where the power and duty are not governmental, and, in special cases, where they are, but where the corporations derive some special pecuniary benefit or advantage from the exercise of the power, or have specially undertaken to perform the duty, in consideration of some special advantage, the rule is otherwise, and they are liable, like other corporations, for actual misfeasance. 3. The original and ordinary municipal agencies for this state are counties, towns and school districts. Special city and borough charters have also been granted to the inhabitants of densely populated portions of towns, at their request, in part to enable them to exercise the ordinary governmental powers which the town before exercised over the same territory, more efficiently, but mainly to enable them to enjoy a variety of other special powers and privileges not governmental, for the special benefit of the local community." To the same effect are the cases of Oliver v. Worcester, 102 Mass. 489; Buttrick v. Lowell, 1 Allen, 172; City of Richmond v. Long's Adm'r, 17 Grat. 375; Western Sav. Funds Society v. City of Philadelphia, 31 Pa. St. 175; Bailey v. Mayor of New York, 3 Hill, 531; Lloyd v. City of New York, 1 Seld. [5 N. Y.] 369; Martin v. Brooklyn, 1 Hill, 545; Western Homeopathic College v. City of Cleveland, 12 Ohio St. 375; Hewison v. New Haven, 37 Conn. 475; Torbush v. City of Norwich, 38 Conn. 225; Mead v. New Haven, 40 Conn.

72; and Weightman v. Washington, 1 Black [66 U. S.] 39, 49; and it may be considered as settled, that "a city which has assumed, or on which is imposed, a public governmental duty, is not liable for the nonperformance or negligent performance of such duty, and it makes no difference that the duty is imposed by a special charter which the city has accepted." Hewison v. New Haven, 37 Conn. 475.

The principal difficulty which courts have experienced, has been in ascertaining, clearly and accurately, the line of demarcation between public governmental duties and private or corporate duties, and has not been in the determination of the question, whether, for a refusal to discharge public duties, the corporation was or was not liable. Public duties are, in general, those which are exercised by the state as a part of its sovereignty, for the benefit of the whole public, and the discharge of which is delegated or imposed by the state upon the municipal corporation. They are not exercised either by the state or the corporation for its own emolument or benefit, but for the benefit and protection of the entire population. Familiar examples of such governmental duties are the duty of preserving the peace, and the protection of property from wrong doers, the construction of highways, the protection of health and the prevention of nuisances. The execution of these duties is undertaken by the government because there is a universal obligation resting upon the government to protect all its citizens, and because the prevention of crime, the preservation of health, and the construction of means of intercommunication are benefits in which the whole community is alike and equally interested. Private or corporate powers are those which the city is authorized to execute for its own emolument, and from which it derives special advantage, or for the increased comfort of its citizens, or for the well ordering and convenient regulation of particular classes of the business of its inhabitants, but are not exercised in the discharge of those general and recognized duties which are undertaken by the government for the universal benefit. Examples of well understood corporate powers are, the right to make sewers, to introduce water and gas, to establish parks, to build public markets, to regulate private carriers. The difference between these two classes of duties is thus stated by Chief Justice Nelson, in Bailey v. Mayor of New York, 3 Hill, 539: "The distinction is quite clear and well settled, and the process of separation practicable. To this end, regard should be had, not so much to the nature and character of the various powers conferred, as to the object and purpose of the legislature in conferring them. If granted for public purposes exclusively, they belong to the corporate body in its public, political or municipal character. But, if the grant was for purposes of private advantage and emolument, though the public may derive a common benefit therefrom, the

corporation, quoad hoc, is to be regarded as a private company."

Such being the general distinction between governmental and corporate duties, there has never been any difference of opinion as to the class within which the preservation of the peace and the protection of property belongs. The duty has universally been considered to be of a public nature. It is discharged, in general, by the police force of the state or city. These officers are officers of the law, whose appointment is delegated to the city by the state, in order that this general duty may be easily and conveniently performed, and are not, in the exercise or in the non-exercise of their police powers, agents or servants of the city.

(2.) It is claimed by the plaintiff that the declaration also alleges a positive trespass, and the actual commission of an unlawful act by the city authorities, for which the corporation is liable as a trespasser. The allegations are, that the defendant, by its officers and agents, protected the persons who were destroying the plaintiff's property, and prevented the plaintiff from resisting the destruction of said property, as he might have done had he not been so prevented. It is further alleged, that the acts of violence were well known by the defendant to be done without right or claim of right, and in violation of law. The substance of these averments is, that the mayor and the police officers were co-trespassers, not acting colore officii, but in open and known hostility to the requirements of law. Assuming that the averments are sufficiently definite to sustain the action, the corporation is not liable for the unlawful acts of its officers, committed ultra vires, and not colore officii, in the known and wilful violation of law. Thayer v. Boston, 19 Pick. 511; Buttrick v. Lowell, 1 Allen, 172; Western Homeopathic Medicine College v. City of Cleveland, 12 Ohio St. 375. The demurrer is sustained.