Hart, J.
The question here presented is whether in this state a municipal corporation is liable for injuries, suffered as a result of its negligent acts in the construction and maintenance of a public street, to persons other than those using such street in the ordinary modes of travel.
In the first place, this court has held repeatedly that “streets, and highways are public and governmental institutions, maintained for the free use of all citizens of the state, and municipalities while engaged in the improvement of streets are engaged in the performance of a governmental function.” City of Wooster v. Arbenz, 116 Ohio St., 281, 156 N. E., 210, 52 A. L. R., 518; Taylor v. City of Cincinnati, 143 Ohio St., 426, 55 N. E. (2d), 724, 155 A. L. R., 44; Davis v. Charles Shutrump & Sons Co., 140 Ohio St., 89, 42 N. E. (2d), 663; Larson v. Cleveland Ry. Co., 142 Ohio St., 20, 50 N. E. (2d), 163.
In this state, except as provided by statute, municipal corporations enjoy immunity or freedom from liability for negligence in the performance or nonperformance of their governmental functions. Of course, this common-law immunity has no application where the municipal functions are of a proprietary or private nature. It must follow that, in the absence of statute, a municipality is not liable for harm caused by the fall of a tree if its fall is the result of municipal operations of a governmental nature such as the construction or repair of streets and public ways.
Section 3714, General Code (Section 723.01, Revised Code), provides as follows:
“Municipal corporations shall have special power to regulate the use of the streets, to be exercised in the manner provided by law. The council shall have the care, supervision and control of public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts, and viaducts, within the corporation, and shall cause them to be kept open, in repair, and free from nuisance.” (Italics supplied.)
The provisions of Section 3714, General Code, are in deroga *347 tion of the common-law rule of nonliability and, for that reason, are subject to strict construction. City of Wooster v. Arbenz, supra. And their scope and application have been generally limited to conditions affecting the actual physical structure of the streets or highways and to the physical obstructions or hindrances to travel thereon. 28 Ohio Jurisprudence, 971, Section 612; City of Dayton v. Glaser, 76 Ohio St., 471, 81 N. E., 991, 12 L. R. A. (N. S.), 916; Drake v. City of East Cleveland, 101 Ohio St., 111, 127 N. E., 469; Black v. City of Berea, 137 Ohio St., 611, 613, 32 N. E. (2d), 1, 132 A. L. R., 1391.
A brief analysis of the scope and purpose of the statute is appropriate. The subject matter of the statute — “public highways, streets, avenues, alleys, sidewalks, public grounds, bridges, aqueducts and viaducts” — relates specifically to traditional areas used only for the purpose and means of travel. The term, “public grounds,” contemplates areas to which the public may resort and within which it may walk, drive or ride, etc. It is apparent also that the terms, “street” and “sidewalk,” have the connotation, not of platted street areas, but of areas actually used by the public in travel. Next, it is appropriate to note the scope and character of the duties imposed on a municipality by the statute — to keep these travel areas named “open” to public travel; “in repair,” so as to accommodate and make safe travel over such areas; and “free from nuisance,” which must relate back and be confined to the travel areas specifically named in the statute.
This interpretation of the statute, confining the subject matter to travel areas and municipal responsibility to the care of them to facilitate travel over them, is reflected in the expressions of the courts of this state when construing the terms of the statute. Over and over again the courts have declared that such areas shall be the responsibility of the municipalities, to the extent named in the statute, to persons traveling upon the streets “in the usual modes of travel.” City of Dayton v. Glaser, supra; Gibbs v. Village of Girard, 88 Ohio St., 34, 102 N. E., 299; City of Troy v. Brady, 67 Ohio St., 65, 69, 65 N. E., 616; Drake v. City of East Cleveland, supra; Taylor v. City of Cincinnati, supra; Deckant v. City of Cleveland, 155 Ohio St., 498, 99 N. E. (2d), 609; City of Wooster v. Arbenz, supra.
*348 This interpretation of the statute is emphasized by the position taken by the courts when a traveler on a street abandons the traveled portion and is injured while using a platted but unimproved portion of the street. This court has held that, where a pedestrian departs from a sidewalk upon which he would have received no injury and crosses the street intersection diagonally and is injured by slipping into a catch basin, he must be held to have assumed the risk which lay in the path he chose. City of Dayton v. Taylor’s Admr., 62 Ohio St., 11, 56 N. E., 480. It has also been held by this court that the statute in question has no application to an unimproved pathway located upon premises dedicated and accepted for highway purposes, but which has never been open to public travel, although it has been used as a public way for an extended period of time. The statutory duty under such circumstances is not imposed upon a municipality until it opens the area to public travel or otherwise invites the public to use it. City of Dayton v. Rhotehamel, Admr., 90 Ohio St., 175, 106 N. E., 967; Dering v. City of Cleveland, 102 Ohio St., 94, 130 N. E., 504.
As to cases more nearly in point with the issues presented in the instant case, this court in the case of City of Wooster v. Arbenz, supra, specifically held that the duties and obligations imposed upon municipalities with reference to the care of their streets through the operation of Section 3714, General Code, “are in derogation of the common law and must therefore be strictly construed, and [that] the provisions of that legislation cannot by implication or interpretation be extended to make a municipality liable for the negligence of its servants while engaged in the act of making improvements to streets, unless such negligence relates to a condition of the street itself and the dam,age is caused by a defective condition thereof.”
In that case Arbenz was injured by a collision of an automobile driven by him with a truck owned and operated by the city of Wooster, the truck at the time being used in hauling cinders for the repair of a public street of that city. At the close of plaintiff’s case, the trial court directed a verdict in favor of the defendant on the ground that the city in operating the truck in question was engaged in a governmental or sovereign function as to which it would not be liable in damages.
*349 The Court of Appeals reversed the judgment of the trial court, on the ground that the city, in hauling cinders to be placed on one of its streets, was acting in a proprietary capacity. This court reversed the judgment of the Court of Appeals and affirmed the judgment of the Common Pleas Court.
This court, in considering the facts of that case, took the position that there was “no liability on the part of a municipality in actions for tort, if the function exercised by the municipality at the time of the injury to the plaintiff was a governmental function,” and held that the function of repairing and improving streets is a governmental function. This court then considered Section 3714, General Code, as affecting the liability of the city under such circumstances, and in his opinion Chief justice Marshall said:
“By virtue of Section 3714, the duty has been enjoined upon municipalities to keep streets and alleys open, in repair, and free from nuisance, and it follows from that that they may be made to respond in damages for a failure so to do. * * *
“Numerous cases have been decided and reported by this court holding municipalities responsible for damages caused by defects in streets, but this court has not in any case declared municipalities responsible for the negligence of their agents and servants while engaged in making repairs and improvements to streets.”
Under authority of the Arbens case, if, in the instant case, the tree had fallen upon the Smith house at the time and because the city workmen cut off its roots in connection with the street paving project, there would be no liability upon the part of the defendant. Does the fact that the tree did not fall and damage the house until several months after the cutting of its roots create a nuisance off the street area and effect, a different legal result under or without the statute? Suppose, in connection with the street improvement, the workmen had negligently left a barrel of poisonous liquid on or near the street, which liquid some months later leaked out and ran off through sewers or drains and damaged property a half mile, a quarter of a mile or a few rods from the street itself, would the city be liable for such damage? Under the principle of governmental function, we do not think so. The duty to remove the tree in ques *350 tion as an'unsafe instrumentality, located as it was outside the area of the “street” itself and not affecting travel on the street, continued to be a common law duty within a governmental function.
In the case of Davis v. Charles Shutrump & Sons Co., supra, where the plaintiff, employed by a contractor who in turn was employed by the city of Youngstown, fell off the top of a bridge abutment within the street area and was injured, this court held that, since plaintiff was not a pedestrian using the street for public travel, he was not protected by the statute, and that, “while under Section 3714, General Code, a municipality is required to keep its streets open, in repair and free from nuisance, the statute must be strictly construed and only those who are using the streets of such municipality as a means of travel are entitled to invoke the rights or remedies afforded by the statute. ’ ’
In several cases outside Ohio, under statutes similar to that of Ohio requiring municipalities to keep their streets in repair, it has been held that there can be no liability upon a municipality even to travelers upon the street or highway, and the same would be true as to those not on the highway, for injuries from falling trees or falling limbs from trees standing upon or adjacent to the traveled highway.
In the case of Miller v. City of Detroit, 156 Mich., 630, 121 N. W., 490, 132 Am. St. Rep., 537, the plaintiff, while walking upon a sidewalk in the city of Detroit, was struck and injured by a dead limb which fell from a tree. The tree stood in a-public street between the sidewalk and curb, and it was admitted by counsel that the limb was five inches thick and fifteen feet long, and that it had been dead for four years. The plaintiff brought an action against the city for damages. The trial court directed a verdict for the defendant. The statute of Michigan upon which the plaintiff based his right of recovery provided :
“That any person or persons sustaining bodily injury upon any of the public highways or streets in this state, by reason of' neglect to keep such public highways or streets, and all bridges, sidewalks, cross-walks and culverts on the same in reasonable repair, and in condition reasonably safe and fit for *351 travel by the township, village, city or corporation whose corporate authority extends over such public highway, street, bridge, sidewalk, cross-walk or culvert, and whose duty it is to keep the same in reasonable repair, such township, village, city or corporation shall be liable to and shall pay to the person or persons so injured or disabled just damages * *
The Supreme Court of Michigan, in affirming the judgment, said:
‘ ‘ Certainly it would not be the common understanding from this title that the presence of a dead limb of a tree within the limits of, or overhanging from private premises, a public highway, is such a defect in the highway as to be within the intention of the Legislature in its requirements to maintain and repair streets, bridges, sidewalks, cross-walks, and culverts, and to respond in damages. If we look at the sections themselves, we shall find that they do not give a right of recovery for all injuries, but only such as are sustained by reason of neglect to keejD the ways in repair and in condition reasonably safe and fit for travel — not to maintain a highway where the traveler shall be safe. The duty imposed is to keep ways in reasonable repair, so that they (the ways) may be reasonably safe and convenient for public travel, a stating of the purpose or reason for the requirements made, not an enlargement of them. * * *
“* * # We have held that this statute imposes a duty to remove some kinds of dangerous obstructions from a highway, after notice, but this is upon the theory that they constitute defects in the surface of the roadway itself, and upon no other theory, and this has been held not to include a duty to protect against such temporary obstructions as are due to natural causes * * * [cited cases omitted].
“Another reason forbidding the construction urged is that the language of the statute clearly indicates that it is to the physical highway that it refers in its method of construction, maintenance, defects, and repair. This is indicated, not only by the general words, which, as already stated, should be understood to mean no more, and the rule that a statutory liability, created in derogation of the common law cannot be enlarged by construction * * * [cited cases omitted] but also by the mention of various specific portions of the way, such as side *352 walks, culverts and bridges, which tend to limit the word ‘street.’ ”
In the case of Dyer v. City and Town of Danbury, 85 Conn., 128, 81 A., 958, 39 L. R. A. (N. S.), 405, Ann. Cas. 1913A, 784, the plaintiff while passing along a sidewalk was hit on the head and injured by a falling limb which had become “dislodged from” or was “broken off by the wind from” a dead tree which stood in the limits of the street and overlooked the sidewalk. The street was a public highway of the city, and it was the duty of the city to keep it in repair and in safe condition for public travel. The tree had existed in its dangerous condition for more than a year and constituted a nuisance upon the highway. The action was brought against the city by the injured party. A demurrer to the petition was sustained and judgment was entered in favor of the city. On appeal to the Supreme Court of Connecticut that judgment was affirmed.. In the course of its opinion the court said:
“The overhanging limb did not constitute a defect in the highway. It did not obstruct travel thereon, and the city was not bound to remove it as a part of its duty ‘to build and repair’ the highways within its limits. Hewison v. New Haven, 34 Conn., 136, 143, 144. The complaint, therefore, does not state a cause of action under Section 2020 of the General Statutes, which provides that any person injured by a defective road or bridge may recover damages from the party bound to keep it in repair.
“If the overhanging limb, by reason of its liability to fall upon the traveled part of the highway, constituted a nuisance, as alleged, it ought to have been removed. If it endangered travel upon the highway it was a public nuisance and the city could and should have caused its removal. But this duty of the city was a public governmental one, for the neglect of which no liability at common law ensued to the city, and no statute imposes any. Hewison v. New Haven, 37 Conn., 475, 483. The complaint, therefore, states no cause of action arising from the city’s failure to abate the nuisance.” See, also, Armstrong v. Waffle, 212 Iowa, 335, 236 N. W., 507; Bouchard v. City of Auburn, 133 Me., 439, 179 A., 718; Robinson v. Minnehaha County, 65 S. D., 628, 277 N. W., 324. Contra, see Jones v. *353 Town of Great Barrington, 273 Mass., 483, 174 N. E., 118; Morris v. Salt Lake City, 35 Utah, 474, 101 P., 373.
The instant case is to be distinguished from cases relating to nuisances permitted to exist in public park areas. In the case of Gottesman, Admr., v. City of Cleveland, 142 Ohio St., 410, 52 N. E. (2d), 644, the defendant city was held liable in damages under the statute for injuries to a child caused by the rolling of pipes negligently piled on a park area; and in the case of Gaines v. Village of Wyoming, 147 Ohio St., 491, 72 N. E. (2d), 369, the defendant village was held liable in damages under the statute to a person injured in a public park through the operations of a rifle range open to the public with the permission of the village. In those cases, liability was imposed upon the municipalities for neglect to keep the parks as “public grounds” “free from nuisance” for the benefit of persons entitled to use and using such park areas for the purposes for which they were created and established, and for that reason the responsibility of the municipalities to keep the park areas free from nuisance was not limited to the streets and highways located within such parks.
In the instant case, this court, applying to the statute in question a strict construction as is required, concludes that the weakened tree did not constitute a disrepair, defect or nuisance in the “street” itself, and, as a consequence, the provisions of Section 3714, G-eneral Code, did not create a liability against the defendant. Likewise, there was no liability against the defendant outside the statute, because of its governmental immunity.
The judgment of the Court of Appeals is reversed and that of the Common Pleas Court affirmed.

Judgment reversed.

Matthias, Stewart, Bell and Taut, JJ., concur.